**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
**NONGYAW TRAKANSOOK**,

                              **Plaintiff,**                    <u>**MEMORANDUM**</u>
                                                               <u>**AND ORDER**</u>

          **-against-**
                                                               **06-CV-1640 (SMG)**

**ASTORIA FEDERAL SAVINGS AND LOAN**
**ASSOCIATION and 39 WOOD REALTY CORP.**,

                              **Defendants.**
-------------------------------------------------------------------X
**GOLD, S., U.S.M.J.:**

## Introduction

Plaintiff, Nongyaw Trakansook ("Trakansook"), brings this action pursuant to 42 U.S.C.

§ 1983, alleging that defendants Astoria Federal Savings and Loan ("Astoria") and 39 Wood

Realty Corp. ("39 Wood") violated her Fifth and Fourteenth Amendments rights by taking her

property without just compensation.  Defendants move to dismiss the complaint on various

grounds, while plaintiff moves for leave to amend her complaint to include a new cause of action

under the Equal Credit Opportunity Act ("ECOA"), alleging discrimination on the basis of her

age, gender and national origin.  *See* Plaintiff's Memorandum of Law ("Pl.'s Mem.") at 3; Aff. of

Paul E. Kerson ("Kerson Aff.") ¶ 7.  The parties have consented to my presiding over this case

for all purposes.  Docket Entry 12.  For the reasons set forth below, defendants' motion to

dismiss the complaint is granted in all respects and plaintiff's motion for leave to amend is

denied.

## Background

The pertinent facts are generally not in dispute and appear in the complaint, the parties'

motion papers, and the relevant state court record.  Plaintiff Trakansook, who is now 65 years

old, was born in Thailand and moved to the United States in 1968. Pl.'s Mem. at 1. Until

recently, Ms. Trakansook owned her own home at 96-11 Alstyne Avenue, Corona, Queens

County, New York (the "property"), on which defendant Astoria held the mortgage. Compl.

¶¶ 1, 7. In 1998, Trakansook failed to make the required payments on her mortgage, and Astoria

commenced foreclosure proceedings in the Queens County Supreme Court. Compl. ¶ 7; Savino

Aff. ¶¶ 6-7. Astoria obtained a "Judgment of Foreclosure and Sale" and proceeded to sell the

house to defendant 39 Wood on June 14, 2002. Compl. ¶ 10; Savino Aff. ¶ 8.

    The state court record reveals the following sequence of events.[1] In September of 1998,

_____

[1]In deciding the pending motions, I have taken notice of the briefs submitted by the parties to the New York State Supreme Court, Appellate Division, and of the Appellate Division decisions themselves. Although a motion to dismiss must generally be decided based only upon the pleadings, Federal Rule of Civil Procedure 12(c) does not require conversion of defendants' motion to one for summary judgment under Rule 56 for several reasons. First, a court may consider materials outside of the pleadings when determining issues of subject matter jurisdiction. *Wittich v. Wittich*, 2006 WL 3437407, *2 n.2 (E.D.N.Y. Nov. 29, 2006). Second, a court may appropriately examine the state court record where issues of *res judicata* or collateral estoppel are at stake. *Id.* Finally, none of the fairness concerns that arise when matters outside of the pleadings are considered are implicated here.

> A finding that plaintiff has had notice of documents used by defendant in a 12(b)(6) motion is significant since, as noted earlier, the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason-requiring notice so that the party against whom the motion to dismiss is made may respond-that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions. Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991). Here, having been a party to the state court proceedings, plaintiff clearly had notice of the briefs submitted and decisions rendered there. In addition, at oral argument, I alerted counsel that I intended to take notice of these documents, and gave each side an opportunity to object. Transcript of Oral Argument ("Tr.") at 2-3. No objections were raised. *Id.* at 4.

defendant Astoria commenced foreclosure proceedings against plaintiff.  State Court Brief for Plaintiff-Appellant Astoria Savings and Loan ("Astoria State Court Br."), 2004 WL 3717885, at *2.  Trakansook and Astoria subsequently entered into a stipulation providing that Trakansook would pay $28,379.00 by September 20, 1999 to reinstate the mortgage, and that her failure to do so would constitute her consent to entry of a judgment of foreclosure.  *Id.*

On October 26, 1999, Astoria moved for a judgment of foreclosure based upon its claim that Trakansook failed to make the required payment.[2]  *Id.*  Trakansook then brought a series of motions attempting to avoid foreclosure.  *Id.* at *3.  Her efforts were ultimately unsuccessful and, on April 5, 2002, a court-appointed referee auctioned the premises.  *Id.* at *2-4.  On the same day, Justice Peter O'Donoghue signed an order to show cause sought by Trakansook – her third – and stayed the sale of the property.  Justice O'Donoghue subsequently denied Trakansook's application for relief, however, and Astoria turned the deed to the property over to its new owner, defendant 39 Wood.  *Id.* at *5.

Trakansook then brought yet another motion.  On August 15, 2002, Justice Durante of the New York Supreme Court entered an order providing that Trakansook could redeem the property within 20 days, but that Astoria would be permitted to deliver the deed to 39 Wood if she failed to do so.  *Id.* at *6-7.  The order was served on Trakansook's attorney on September 13, 2002.  *Id.*

On or about October 1, 2002, Trakansook provided several checks to Astoria totaling

---

[2] Trakansook contended at the oral argument before this court that she tendered a check for $28,379.72 and then a check for $29,000, but that both were refused by Astoria in or about September or October of 2000.  Tr. at 4-5.  Astoria's brief to the state court asserts that only a photocopy of a $29,000 check was received in November of 1999, together with genuine checks in much smaller amounts.  Astoria State Court Br. at *2-3.  Astoria refused to accept the checks and photocopied document.  *Id.*

$120,955.12, the principal amount due on the mortgage, but failed to include payment of $18,286.19 in foreclosure fees and costs.  Astoria State Court Br. at *7; Trakansook Aff. ¶ 4.  However, with the checks she did provide, Trakansook included a letter from her attorney representing that the remaining funds due would be tendered promptly.  Astoria State Court Br. at *7.  Although Trakansook asserts she thereafter delivered a genuine check for the remaining balance, Tr. at 7, Astoria contends that Trakansook provided only a photocopy of a check and not a negotiable instrument.  Astoria State Court Br. at *7.

The events most directly leading to the action now pending before this court followed.  On March 6, 2003, defendant Astoria moved to have Trakansook held in default of Justice Durante's August 15, 2002 order.  *Id.* at *9.  In a decision dated September 26, 2003, Justice Durante found that Trakansook had "made a good faith tender of the full amount due" and refused to declare her in default.  Compl. ¶ 7,  Ex A; Astoria State Court Br. at *9-10.  Astoria appealed from Justice Durante's ruling, and submitted its brief on appeal on June 25, 2004.  Astoria State Court Br. at *1.  On May 16, 2005, the Appellate Division, Second Department reversed Justice Durante's order and reinstated the judgment of foreclosure and sale.  Compl. ¶ 8 and Ex. C; *Astoria Fed. Sav. & Loan, et al. v. Trakansook*, 18 A.D.3d 586 (2d Dept. 2005).  The Appellate Division reasoned as follows:

> [I]n order to validly redeem one's property, the mortgagor must pay the amount due for principal and interest and the costs of the action, together with the expenses of the proceedings to sell, if any. In this case, the respondent did not actually pay the $18,219.49 in foreclosure costs and disbursements as demanded. . . .  A good faith effort in submitting a photocopy of a check was not sufficient to redeem the property.

*Id.* at 587-88 (internal citations and quotations omitted).  Although Trakansook sought leave to

appeal to the New York Court of Appeals, her application was denied on November 22, 2005. Compl. ¶ 9, Ex. D; *Astoria Fed. Sav. & Loan Ass'n v. Nong Yaw Trakansook*, 5 N.Y.3d 880 (2005).

Trakansook also commenced her own state court litigation. In September of 2002, apparently at the same time or just shortly before she tendered the check or photocopy, Trakansook brought a separate action in state court as plaintiff against both Astoria and 39 Wood, seeking to set aside and vacate the sale of her home and reclaim the premises. That action was dismissed in July of 2003, and the order of dismissal was affirmed on appeal. *See Trakansook v. 39 Wood Realty Corp., et al.*, 18 A.D.3d 633 (2d Dept. 2005).

On April 7, 2006, Trakansook filed her complaint in this court. Trakansook's federal complaint, brought pursuant to 42 U.S.C. § 1983, alleges that defendants violated her Fifth Amendment rights. Compl. ¶ 13. Trakansook seeks an order from this court vacating the foreclosure and sale and awarding her title to the property, $750,000 in compensatory damages, and attorneys fees and costs. Trakansook seeks the same relief in her proposed amended complaint, which differs from her original pleading only in that it seeks to add a claim under the ECOA. Docket Entry 13.

## Defendants' Motion to Dismiss

### i. Legal Standard

In both her original and proposed amended complaint, plaintiff alleges that the defendants and the state courts violated her federal rights under the Fifth, and presumably, the Fourteenth Amendments by taking her private property without just compensation.[3] Defendants argue,

---

[3]Although plaintiff makes no specific reference to the Fourteenth Amendment in her complaint, it is by virtue of that amendment that the Fifth Amendment's Takings Clause is

among other things, that the *Rooker-Feldman* Doctrine deprives this court of jurisdiction over plaintiff's claim because it is essentially an appeal from a state court judgment. Defendants contend in the alternative that plaintiff's claim is precluded by *res judicata*.

A court deciding a 12(b)(6) motion must accept the allegations in the complaint as true and draw all inferences in favor of the nonmoving party. *Patel v. Searles*, 305 F.3d 130, 135 (2d Cir. 2002)*; Thomas v. City of New York*, 143 F.3d 31, 37 (2d Cir. 1998). "A complaint will only be dismissed if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Patel*, 305 F.3d at 135, *quoting Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957).

### ii. Rooker-Feldman Doctrine

The *Rooker-Feldman* doctrine "precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority[.]" *Exxon Mobile Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 291, 125 S. Ct. 1517, 1526 (2005). The doctrine is grounded in the principle that 28 U.S.C. § 1257 vests jurisdiction to hear appeals from the highest court of each state exclusively in the United States Supreme Court. District courts may not, therefore, adjudicate what are in essence *de facto* appeals from state court judgments. *Id.* at 291-92, 1526. The doctrine is jurisdictional, and not grounded in the same considerations as preclusion law. *Id.* at 292-93, 1527. The application of the *Rooker-Feldman* doctrine "is confined to cases...brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district

---

applicable to the states. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 617, 121 S. Ct. 2448, 2457 (2001). ("The Takings Clause of the Fifth Amendment, [is] applicable to the States through the Fourteenth Amendment[.]").

court proceedings commenced and inviting district court review and rejection of those judgments." *Hoblock v. Albany County Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2006), *quoting Exxon*, 544 U.S. at 284, 125 S. Ct. at 1521-22.

The Second Circuit has set forth a four-pronged test to determine whether *Rooker-Feldman* precludes a federal district court from exercising jurisdiction over a claim:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced" – *i.e., Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. *Hoblock,* 422 F.3d at 85. The first and fourth requirements may be loosely termed "procedural"; the second and third may be termed "substantive." *Id.*

*Hoblock*, 422 F.3d at 85; *see also, MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 137-138 (E.D.N.Y. 2006).

Here, both the first and fourth "procedural" requirements have clearly been met. Trakansook lost before the Appellate Division. The New York State Court of Appeals denied her application for leave to appeal on November 22, 2005, before this suit was commenced in April of 2006.

The second and third requirements of the *Hoblock* test merit closer consideration. The second *Hoblock* inquiry is whether the federal court plaintiff's claims arise from injuries caused by a state court judgment. The *Hoblock* decision describes this element as "the core requirement from which the others derive." 422 F.3d at 87. *See also, McKithen v. Brown*, __ F.3d __, 2007 WL 744728, *5 (2d Cir. Mar. 13, 2007). Although whether an injury is caused by a state court judgment may be "far from obvious," *id.,* the Second Circuit's decision in *Hoblock* provides

7

courts considering the question with the following guidance:

> [A] federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it. Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear.

*Hoblock*, 422 F.3d at 88.

Plaintiffs in *Hoblock* were voters and candidates complaining that their constitutional rights would be violated if the Albany County Board of Elections certified election results without counting certain disputed absentee ballots. *Id.* at 81. The Court found that the County Board had refused to count the absentee ballots because a state court ordered it not to do so. *Id.* at 89. The *Hoblock* court therefore held that "the voters' injury was produced by the state-court judgment directing the Board not to count their ballots," and that their federal action was barred by *Rooker-Feldman. Id.* at 88.

In this case, plaintiff claims she was injured when her house was taken from her without just compensation. However, Astoria did not take plaintiff's house from her and then ask the state court to ratify its actions; rather, Astoria sought and obtained a judgment of foreclosure and sale from the state court. That judgment, when subsequently executed, had the effect of depriving plaintiff of her property and causing the injury she asks this court to address. In other words, plaintiff's injury – like the injury complained of in *Hoblock* – was caused by the state court judgment, not by the action of a defendant that a state court ratified, acquiesced in, or left unpunished. Indeed, in her affidavit in opposition to defendants' motion, plaintiff asserts, "I believe my civil rights have been violated by this decision [of the Appellate Division, reversing

Justice Durante]."

Trakansook seems to argue that her injuries were caused by Astoria's decision to seek a judgment of foreclosure and not by the judgment itself. This argument would totally eviscerate *Rooker-Feldman* and should be rejected on that basis.[4] State courts do not issue unsolicited judgments; *every* state court judgment is prompted by a litigant's application. A hypothetical child custody case employed by the Second Circuit to illustrate its reasoning in *Hoblock* makes this point:

> [I]f the state has taken custody of a child pursuant to a state court judgment, the parent cannot escape *Rooker-Feldman* simply by alleging in federal court that he was injured by the state employees who took his child rather than by the judgment authorizing them to take the child.

*Hoblock*, 422 F.3d at 88. Similarly, Trakansook may not avoid *Rooker-Feldman* here by alleging that she was injured by Astoria's motion to have her held in default rather than by the state court's judgment of foreclosure.

It follows logically that the third *Hoblock* requirement – that the plaintiff's claim must

---

[4]To the extent that Trakansook claims she was injured by the conduct of Astoria separate and apart from its prosecution of a foreclosure action, her claim might not be barred by *Rooker-Feldman,* but it would not be cognizable under 42 U.S.C. § 1983. Section 1983 provides a cause of action for a violation of constitutional rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia...." 42 U.S.C. § 1983. Astoria is a private entity, operating according to private procedures. In addition, plaintiff's complaint fails to allege any connection to state actors in any relevant respect whatsoever. Compl. ¶¶ 2, 13 (alleging, respectively, only that Astoria is licensed by government agencies and that it made "use of the New York State court system"). Although plaintiff cites three cases in support of her contention that Astoria acted under color of state law, Compl. ¶ 13, each is inapposite. In *Hollis v. Itawamba County Loans*, 657 F.2d 746 (5th Cir. 1981), state officials were named as defendants together with the lender, and the issue before the court was the operation and constitutionality of a statute authorizing pre-hearing seizures. In *Armstrong v. U.S.*, 364 U.S. 40, 80 S. Ct. 1563 (1960) and *Shelden v. U.S.*, 7 F.3d 1022 (Fed. Cir. 1993), the United States government was the party alleged to have taken the plaintiff's property without just compensation.

9

invite review and rejection of a state court judgment – has been met as well.  Because

Trakansook's complaint asks this court to vacate the judgment of foreclosure and sale and award

her title to the property, it is plain that she is inviting this court to "reject" the appellate division's

order.  *Cf. Mascoll v. Strumpf*, 2006 WL 2795175, *7-8 (E.D.N.Y. Sept. 26, 2006) (holding that

*Rooker-Feldman* did not bar an action, in part because the plaintiff did not seek an order actually

vacating the state court's judgment as to her debt, but instead claimed that defendant debt

collectors misused the judicial process by persisting in collection efforts when they should have

known that the creditor had already determined that the debt was not owed).

Because Trakansook's federal claim is premised on a legal theory different from any

raised in state court, it is less clear that she seeks to have this court "review" the state court

judgment.  The Second Circuit has explained, however, that a federal plaintiff need not ask the

federal court to "review" the legal analysis employed by the state court: "a federal plaintiff

cannot escape the *Rooker-Feldman* bar simply by relying on a legal theory not raised in state

court."  *Hoblock*, 422 F.3d at 87.  This point was further emphasized in *McKithen*, where the

Second Circuit stated that:

> What *Exxon Mobil* and *Hoblock*...make clear is that the
> applicability of the *Rooker-Feldman* doctrine turns not on the
> *similarity* between a party's state-court and federal-court claims
> (which is, generally speaking, the focus of ordinary preclusion
> law), but rather on the *causal relationship* between the state-court
> judgment and the injury of which the party complains in federal
> court.

*McKithen*, 2007 WL 744728, *6.   In *Hoblock*, again employing a hypothetical child custody case

to illustrate its reasoning, the court stated:

> Suppose a state court, *based purely on state law*, terminates a
> father's parental rights and orders the state to take custody of his

> son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his *federal substantive due-process rights* as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do.

*Hoblock*, 422 F.3d at 87 (emphasis added). Here, Trakansook's property was taken from her pursuant to a state court order, and she now sues in this court for the return of that property on grounds that the state court's order violated her constitutional rights. This, as *Hoblock* makes clear, she may not do.

Defendants have satisfied each of the four requirements for application of the *Rooker-Feldman* doctrine. Accordingly, this court lacks jurisdiction over plaintiff's Section 1983 claim.

### iii. Res Judicata

Even if *Rooker-Feldman* did not require dismissal, preclusion law would bar plaintiff's claim. The Full Faith and Credit Act, 28 U.S.C. § 1738, has long been understood to encompass the doctrines of claim and issue preclusion and to require that federal courts not grant a forum to litigants whose claims have previously been resolved in state court. *See San Remo Hotel, L.P. v. City & County of San Francisco, Cal.*, 545 U.S. 323, 336-38, 125 S. Ct. 2491, 2500-02 (2005) (holding that the full faith and credit statute encompasses the doctrines of claim and issue preclusion and specifically declining to carve out an exception "to provide a federal forum for litigants who seek to advance federal takings claims that are not ripe until the entry of a final state judgment denying just compensation").

A federal court considering the preclusive effect of a state court judgment looks to the law of the state in which the judgment was rendered. *Ferris v. Cuevas,* 118 F.3d 122, 125-26 (2d Cir. 1997) (holding that "we give preclusive effect to a state court judgment whenever the courts

of that state would do so").  Here, then, the effect of the prior judgment at issue is governed by

New York law.  The Second Circuit has described the preclusive effect of a prior judgment under

New York law as follows:

> Under both New York law and federal law, the doctrine of *res
> judicata,* or claim preclusion, provides that "[a] final judgment on
> the merits of an action precludes the parties or their privies from
> relitigating issues that were or could have been raised in that
> action." *Federated Dep't Stores, Inc. v. Moitie,* 452 U.S. 394, 398,
> 101 S. Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). Simply put, the
> doctrine states that once a final judgment has been entered on the
> merits of a case, that judgment will bar any subsequent litigation
> by the same parties or those in privity with them concerning "the
> transaction, or series of connected transactions, out of which the
> [first] action arose." *Restatement (Second) of Judgments* § 24(1)
> (1982).

*Maharaj v. Bankamerica Corp.*, 128 F.3d 94, 97 (2d Cir. 1997).  "Similarly, a defendant who lost

the prior action cannot assert a new defense by way of collateral attack on the judgment."  *18

Moore's Federal Practice 3d* § 131.20[1] (Matthew Bender 3d ed.).  *See also McKithen*, 2007

WL 744728, at *11; *Legnani v. Alitalia Linee Aeree Italiane*, *S.p.A.*, 400 F.3d 139, 141 (2d Cir.

2005).

Each of the elements required for claim preclusion is present here.  First, a final judgment

on the merits – a judgment of foreclosure and sale – was entered in the state court litigation.

Second, the parties in that litigation were the same as those now before this court.  Moreover,

Trakansook could have presented her federal constitutional claims in the state court foreclosure

litigation; "[s]tate courts as well as federal courts have jurisdiction over § 1983 cases."  *Howlett

v. Rose*, 496 U.S. 356, 358,  110 S. Ct. 2430, 2433 (1990).  *See also, Migra v. Warren City Sch.

Dist. Bd. of Educ.*, 465 U.S. 75, 83-85, 104 S. Ct. 892, 897-98 (1984) (holding that Section 1983

claims present no special exception to the ordinary rules of claim preclusion).  Finally, both the

state court litigation and this case arise from the same transaction or series of events: Trakansook's failure to make mortgage payments, Astoria's efforts to hold her in default, the state court's issuance of a judgment of foreclosure and sale, and the purchase of the property by defendant 39 Wood at auction. Although plaintiff's Section 1983 claim invokes a legal theory that was not raised in the state court litigation, this is insufficient to overcome preclusion; under the doctrine of *res judicata* or claim preclusion, "a prior decision dismissed 'on the merits' is binding in all subsequent litigation between the same parties on claims arising out of the same facts, *even if based upon different legal theories* or seeking different relief on issues which were *or might have been* litigated in the prior action but were not." *N. Assur. Co. of Am. v. Square D. Co.,* 201 F.3d 84, 87 (2d Cir. 2000) (emphasis added), *quoting EFCO Corp. v. U.W. Marx, Inc.,* 124 F.3d 394, 397 (2d Cir. 1997). *See also, Reilly v. Reid,* 45 N.Y. 2d 24, 30 (1978) (holding that, "where the same foundation facts serve as a predicate for each proceeding, differences in legal theory and consequent remedy do not create a separate cause of action").

The court in *MacPherson v. State St. Bank* applied these principles and reached a holding directly on point. In that case, plaintiff brought a state court action in which he unsuccessfully sought to vacate a judgment of foreclosure that had been entered against him. The court concluded that *res judicata* therefore precluded a federal court action brought pursuant to 42 U.S.C. § 1983 challenging the constitutionality of the foreclosure. *McPherson*, 452 F. Supp. 2d at 140-41. The result in *McPherson* applies with equal force here, and requires that Trakansook's complaint be dismissed.

### Plaintiff 's Motion for Leave to Amend

Once a defendant has responded to a complaint, a plaintiff may amend her pleading only

"by leave of court or by written consent of the adverse party."  Fed. R. Civ. P. 15(a).  Although

leave to amend is liberally granted, it may be denied in circumstances of "undue delay, bad faith,

undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104,

110 (2d Cir. 2001), *citing Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962).

### i. Plaintiff's ECOA Claim

Plaintiff seeks to amend her original complaint to include a claim under the Equal

Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*  The ECOA prohibits a "creditor"

from discriminating against an applicant "with respect to any aspect of a credit transaction" based

on "race, color, religion, national origin, sex or marital status, or age." 15 U.S.C. § 1691(a).  The

term "credit transaction" is defined by the governing regulations to encompass "every aspect of

an applicant's dealings with a creditor regarding an application for credit or an existing extension

of credit (including, but not limited to,...revocation, alteration, or termination of credit; and

collection procedures)."  12 C.F.R. § 202.2(m).

Plaintiff alleges that she was discriminated against by Astoria in a credit transaction on

the basis of her national origin, gender, and age.[5]  Plaintiff argues that Astoria's refusal to accept

her checks and its decision to appeal from Justice Durante's order were discriminatory, and that

she would have been afforded more leniency if she were a young white male in similar

circumstances.  Assuming without deciding that Trakansook's amended complaint otherwise

---

[5]Plaintiff's proposed amended complaint does not identify any particular basis for
Astoria's alleged discriminatory animus, but instead simply alleges in conclusory terms that
defendants violated the ECOA.  Am. Compl. ¶ 14.  Similarly, in her affidavit in support of her
motion for leave to amend, plaintiff asserts without elaboration only that she was the victim of
discrimination.  Trakansook Aff. ¶ 6.  Trakansook's counsel, though, in an affirmation submitted
in support of the pending motion for leave to amend, alleges that defendants would not have
treated "a younger white man born in Astoria NY" as harshly as they did plaintiff.  Kerson Aff.
¶ 7.

sufficiently pleads an ECOA claim, her proposed amendment would nevertheless be futile because her claim is barred by *res judicata* and the statute of limitations.

### ii. Res Judicata

As discussed above, claim preclusion bars a subsequent litigation arising out of the same facts as a prior action between the same parties that resulted in a final judgment on the merits, even if the subsequent lawsuit is premised upon different legal theories or seeks different relief. *N. Assur. Co. of Am.*, 201 F.3d at 87. Like her Section 1983 claim, plaintiff's cause of action under ECOA arises from the same transactions and events that were at issue in the state court actions. Moreover, *res judicata* applies to federal discrimination claims just as it applies to claims brought pursuant to Section 1983. *Risley v. Fordham Univ.*, 2001 WL 118566, *2, 4-6 (S.D.N.Y. Feb. 13, 2001) (applying *res judicata* to hold that a federal employment discrimination claim was barred, at least to the extent the claim was based on the same events at issue in a state court action in which plaintiff sued on various tort and contract claims). Finally, there is no reason why plaintiff could not have pressed her ECOA claim in the state court litigation. *See, e.g.,* 15 U.S.C. § 1691e(f) (providing that an ECOA claim may be brought in a United States district court "or in any other court of competent jurisdiction"); *Marine Midland Bank, N.A. v. Yoruk*, 662 N.Y.S.2d 957, 958 (4th Dept. 1997) (considering, although ultimately dismissing on its merits, a cause of action under ECOA asserted as a counter-claim in an action by a bank to foreclose on two consolidated mortgages). *See also, Risley*, 2001 WL 118566, at *4 (pointing out that "Title VII claims may be prosecuted in state as well as federal court"). For all of these reasons, plaintiff's claim under the ECOA is barred by *res judicata*.

### *iii. Statute of Limitations*

Plaintiff's effort to add a claim under the ECOA is also futile because the claim would be barred under the applicable statute of limitations. No action under the ECOA may be brought "later than two years from the date of the occurrence of the violation." 15 U.S.C. § 1691e(f). Any determination of the timeliness of an action, therefore, turns on "the date of the occurrence of the violation."

Plaintiff's proposed amended pleading does not allege that defendants violated ECOA on any particular date or by committing any particular act. Instead, plaintiff alleges only that "[t]he acts of the defendant[s]" constituted a violation of ECOA. Am. Compl. ¶ 14. Plaintiff did, however, provide further specification during oral argument, when she identified the discriminatory acts underlying her ECOA claim as Astoria's rejection of her checks in or about September of 2002, Astoria's initiation of foreclosure proceedings in state court on some date earlier than September of 2002, and Astoria's prosecution of the state court litigation against her, which was not finally resolved until November 22, 2005. Tr. at 8-13.

Plaintiff commenced this federal action on April 7, 2006. Accordingly – and assuming for purposes of this decision that any amended pleading would relate back to the date plaintiff's original complaint was filed – plaintiff's ECOA claim would be time-barred unless it is based upon events that took place on or after April 7, 2004. Astoria's initiation of foreclosure litigation, and its rejection of Trakansook's checks or photocopies, had all occurred by late 2002, and those events therefore could not properly form the basis of Trakansook's ECOA claim.

Plaintiff nevertheless argues that her ECOA claim is timely because her federal complaint was filed within two years of November 22, 2005, the date on which she was denied leave to

appeal to the New York Court of Appeals. Tr. at 15. This contention makes little sense. As noted above, the ECOA provides that it is unlawful for any *creditor* to discriminate with respect to any aspect of a credit transaction. 15 U.S.C. § 1691(a). Even assuming that initiating a foreclosure action might constitute discrimination with respect to a credit transaction, it does not follow that the resulting ECOA cause of action does not accrue – and the two-year limitations period does not begin to run – until the foreclosure litigation, including any and all appeals, has run its course. The resolution of the state court appeals – and in particular the denial of leave by the Court of Appeals – were not the actions of a creditor. Rather, the last affirmative step Astoria took in the litigation was its appeal from Justice Durante's ruling dated September 26, 2003, refusing to declare Trakansook in default. Although the record before me does not indicate the date on which Astoria filed its appeal, that date was almost certainly earlier than April of 2004, because the time for taking an appeal under New York CPLR § 5513(a) is 30 days from receipt of the lower court's order. Even if Astoria did not receive notice of Justice Durante's decision until some time in October of 2003, and even if it obtained one or two extensions of time before perfecting its appeal, Astoria would still have brought the appeal before April 7, 2004, and plaintiff's ECOA claim would thus be time-barred.

Some district courts have applied the "federal discovery rule" to ECOA claims. *Jones v. Ford Motor Credit Co.*, 2002 WL 88431, *4-5 (S.D.N.Y. Jan. 22, 2002); *Jones v. Citibank Fed. Sav. Bank*, 844 F.Supp. 437, 440-42 (N.D.Ill. 1994). The "federal discovery rule" or "diligence-discovery rule of accrual" tolls the statute of limitations "where plaintiff would reasonably have had difficulty discerning the fact or cause of injury at the time it was inflicted." *Thompson v. Metropolitan Life Ins., Co.*, 149 F. Supp. 2d 38, 48 (S.D.N.Y. 2001), *citing Kronisch v. U.S.*, 150

F.3d 112, 121 (2d Cir. 1998). Under this rule, "accrual may be postponed until the plaintiff has

or with reasonable diligence should have discovered the critical facts of both his injury and its

cause." *Id., citing Corcoran v. New York Power Auth.*, 202 F.3d 530, 544 (2d Cir. 1999).

Trakansook has given no indication that she seeks to invoke the federal discovery rule,

and has pointed to no event within the limitations period that first led her to believe Astoria's

actions were discriminatory. Moreover, the Supreme Court's holding and reasoning in *TRW, Inc.*

*v. Andrews*, 534 U.S. 19, 122 S. Ct. 441 (2001), suggests that the discovery accrual rule may not

apply to ECOA claims. The Supreme Court held in *TRW* that, except in specific circumstances

identified in the statute itself, the discovery rule does not apply to claims brought under the Fair

Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* In reaching its decision, the Court

declined to adopt a discovery accrual rule generally applicable to all federal claims, and held

instead that whether a limitations period may be tolled until a plaintiff has or should have

discovered his injury is a matter of statutory construction. *TRW*, 534 U.S. at 27-29, 122 S. Ct. at

447-48. Although the parties have not raised the issue and I do not reach it, I note that the ECOA

and FCRA statutes are arguably similar with respect to the factors analyzed in *TRW*.

Trakansook fell behind in her mortgage payments, and Astoria commenced foreclosure

proceedings in 1998. Although Trakansook contends she tendered sufficient funds to redeem the

property, Astoria rejected her tender in or about late 2002. Astoria made its intention to press on

with the foreclosure action clear when it moved to have Trakansook held in default of March of

2003. Plaintiff's ECOA claim is, therefore, plainly time-barred.

For all these reasons, plaintiff's proposed amendment adding a claim under the ECOA

would be futile. Plaintiff's motion for leave to amend is therefore denied.

## <u>Conclusion</u>

For the reasons set forth above, defendants' motion to dismiss is granted and plaintiff's motion for leave to amend her complaint is denied. The Clerk is directed to enter judgment in favor of defendant dismissing this case.

SO ORDERED.

_____/s/_____
Steven M. Gold
United State Magistrate Judge

Brooklyn, New York
April 18, 2007

*U:\JB 2006-2007\Trakansook Final  M&O 041807.wpd*